# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**MACKY STAFFORD,**

        *Plaintiff,*

    **v.**

**ACADIA PHARMACEUTICALS INC.,**
***et al.*,**

        ***Defendants*.**

**Case No. 1:23-CV-03230-JRR**

## MEMORANDUM OPINION

Pending before the court is Defendants' Motion for Summary Judgment (ECF No. 26, the "Motion"). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2023).

## I.    BACKGROUND

Plaintiff Macky Stafford's claims arise from the termination of her employment by Defendant Acadia Pharmaceuticals Inc. ("Acadia") for failure to comply with its COVID-19 vaccination policy. The following facts are undisputed based on Defendants' specific citations to admissible record materials, including deposition testimony and documents exchanged in discovery. FED. R. CIV. P. 56(c). Plaintiff's broad, wholesale assertion that "[n]ot a single material fact averred by Defendants is undisputed in this matter" is unavailing, as are exclamations woven throughout Plaintiff's opposition that assertions of fact on which Defendants rely for their Motion are "disputed" or "vigorously disputed." (ECF No. 28 at p. 5; and *id.*, *passim*.) Plaintiff may not generate a genuine dispute of material fact through unsupported protestations of counsel, generalized challenges to Defendants' brief in support of the Motion, or non-specific references to evidence developed through discovery. FED. R. CIV. P. 56(c) and (e) (requiring, *inter alia*, citation

to particular parts of materials in the record to assert that a fact cannot be, or is, genuinely disputed; and noting that upon a failure to abide subsection (e), the court may accept the assertion of fact in question as undisputed for purposes of ruling on a summary judgment motion).  Where Plaintiff has complied with Rule 56(c) to challenge a defense assertion of undisputed fact, or to generate a genuine dispute of material fact, the court has considered same.

### A.  Plaintiff's Employment Background

On or about March 7, 2016, Plaintiff accepted a job with Acadia as an Executive Neuroscience Sales Specialist in the Baltimore, Maryland sales territory.  (ECF No. 26-4, Offer Letter.)  In her role, Plaintiff was "responsible for all aspects of managing assigned sales territory, including selling products and addressing customer needs."  (ECF No. 26-5, Job Description.)  Her responsibilities included travel to in-person meetings and trainings within her assigned territory, and to regional and national meetings and events.  *Id.*

### B.  Acadia's COVID-19 Policy

By email sent to Acadia staff on May 28, 2021, Defendant Rob Ackles, Acadia's Vice President of People and Performance, advised: "[a]lthough vaccinations are not currently required for employment at Acadia, they may be required for certain company events and activities (i.e. medical congresses or conferences)."  (ECF No. 26-9.)  Mr. Ackles further instructed staff that they would "receive a simple *check-a-box* assignment through Workday[1] to communicate your vaccination status and vaccination date.  This information will be accessible to our People and Performance team and will only be made available to the Covid Response Team and other Acadia leaders as necessary."  *Id.*  Employees were to complete the Workday assignment by June 2, 2021. *Id.*

---

[1] Workday is Defendant's human resources electronic information system.

In the Workday portal, Plaintiff indicated that she was "fully vaccinated" and her "fully vaccinated date (shot date)" was April 12, 2021.  (ECF No. 26-10.)  *See* ECF No. 26-13, Stafford Deposition Tr. 35:3–6 ("When did you receive a COVID vaccination? A. I would say that was on April 12th, 2021 when I was saved.); Tr. 74:16–25 ("It says that you were fully vaccinated on April 12th, 2021, correct? A. Yes. Q. It says: 'Fully vaccinated date (shot date).' Do you see that? A. Yes. Q. Okay.  Did you complete that? A. Yes.").

On September 16, 2021, again by email, Mr. Ackles updated Acadia's employees that "[w]e are preparing to introduce a new policy that will take effect in December 2021, or sooner if required by law, which will require all employees to be fully vaccinated."  (ECF No. 26-11.) Additionally, Mr. Ackles wrote, "[w]e will work to accommodate Acadians who are not vaccinated for religious or disability-related reasons.  The accommodations process will be handled by our People and Performance team."  *Id.*

Acadia's COVID-19 Mandatory Vaccination Policy (the "Policy") went into effect on November 16, 2021.  (ECF No. 26-12.)  The Policy applied to all employees.  *Id*. at p. 2.  Under the Policy, Acadia's employees were required to be fully vaccinated by December 29, 2021.  *Id.* An employee was fully vaccinated per the Policy 14 days following receipt of the last dose, as recommended by the vaccine manufacturer.  *Id*.  Employees were required to verify their vaccination status with Acadia's third-party vaccination verification service by December 23, 2021.  *Id.*  The Policy provided that employees may seek a temporary or long-term exemption from the vaccine requirement on the basis of a disability, medical, or religious reason, and directed those employees to contact their HR Business Partner for that purpose.  *Id*.  The Policy further explained that exempt employees would be required to undertake safety protocols including

masking, social distancing, testing regularly, "and/or having limited access to company or work-related facilities and/or events." *Id.* at p. 3.

### C. Plaintiff's Exemption Request and Accommodation Determination

On November 23, 2021, Plaintiff submitted a letter requesting a religious exemption to the Policy. (ECF No. 26-14.) Her letter reads:

> After reviewing the details of Acadia's COVID-19 Mandatory Vaccination Policy, I have realized that I need to submit this letter of religious exemption. I cannot continue down this path and put myself in a position I am not comfortable with which violates my sincerely held religious beliefs.
>
> Isaiah 33:22 states, "For the Lord is our judge, the Lord is our lawyer, the Lord is our king; it is he who will save us." This verse is direct evidence of the important part God played in the writing of the Constitution. I vehemently believe and model my life according to this fact that the Lord my God had a direct hand in the creation of the United States Constitution. Our Constitution protects my God-given freedoms, including my right to medical privacy. I know this because I study the Bible daily.
>
> Because of this most sincerely held religious belief, which Isaiah 33:22 so beautifully states, I cannot comply with Acadia's policy on the Covid-19 vaccination, or on any medical procedure for that matter.
>
> Thank you most graciously for accommodating my religious exemption from your policy so that I can continue to perform the job that I love.

*Id.*

On November 29, 2021, Plaintiff submitted Acadia's "Religious COVID-19 Vaccination Exemption Accommodation Worksheet." (ECF No. 26-15.) In response to the worksheet's first two questions asking Plaintiff to "explain in her own words" why she requested an accommodation and to "describe the religious principles that guide [her] objection to immunization," Plaintiff referred to her November 21 letter. *Id.* In response to the worksheet's request to "[i]ndicate

whether you are opposed to all immunizations, and if not, the religious basis that prohibits particular immunizations," Plaintiff wrote "I am not willing to waive my right to medical privacy." *Id*.

On January 12, 2022, after Plaintiff failed to verify her vaccination status per the Policy through Acadia's third-party service, Acadia employee Jennifer Toth followed up with Plaintiff to complete the "HireRight[2] vaccination verification." (ECF No. 26-17 at p. 3–4.) Plaintiff responded, "[a]s a reminder, I claimed my religious exemption on November 23, 2021, so I will not be completing a vaccination verification." *Id*. at p. 3. Ms. Toth informed Plaintiff that her "accommodation request was for future requirements but you annotated in Workday and communicated you were vaccinated []. For now, that is all Acadia is requiring so we would need you to verify it through HireRight." *Id*. In other words, Ms. Toth requested that Plaintiff input in HireRight the information regarding her vaccinated status that Plaintiff had already provided months earlier through Workday; Ms. Toth's email did not request that Plaintiff provide new or different information than Plaintiff had already provided over no objection (or contrary to an exemption request). (*See supra* re ECF Nos. 26-10, 26-13.)

In response to Ms. Toth's email, Plaintiff responded "I have complied with each of your deadlines." (ECF No. 26-17 at p. 2.) Ms. Toth again informed Plaintiff that she had not complied with the HireRight verification process that was "completely separate from [her] accommodation request." *Id*. at p. 1. Ms. Toth told Plaintiff that if she did not complete the HireRight process, Acadia would "need to take further action regarding you being out of compliance with our policy." *Id*. Five days later, in view of Plaintiff's failure to input her previously self-reported vaccination status into HireRight, Ms. Toth followed up with Plaintiff to inform her that she needed to follow

---

[2] HireRight was Acadia's third-party service employed to implement its Policy.

Acadia's protocols for unvaccinated employees until she completed the accommodation process.

(ECF No. 26-18.)

As part of Acadia's accommodation process, Plaintiff met over videoconference with Mr. Ackles and Karen Swanson, Director of Benefits & People Operations.  (ECF No. 26-13, Stafford Deposition Tr. 100:19–21.)  Following their conversation, by letter of February 24, 2022, Mr. Ackles wrote:

> We received your request for an accommodation in which you did not seek to be excused from taking the vaccine, but rather from supplying proof of vaccination status. In particular, you objected to the disclosure of the name of the healthcare provider who administered the vaccine to you, as well as the type and date(s) of the doses you received.
>
> After careful review of this accommodation request, Acadia Pharmaceuticals Inc. has approved a process that reduces the information shared with the Company under the verification requirement for our COVID19 Mandatory Vaccination Policy. However, consistent with Company policy and out of consideration for your fellow workers and others with whom you interact in your work for Acadia, we cannot eliminate the verification component completely. As such, rather than directly providing the Company with a photocopy of your vaccine card or other healthcare forms documenting your vaccine status, Acadia is willing to accept a valid COVID-19 Vaccination QR Code, submitted directly to our third-party agent, HireRight, in order to verify your vaccination status. In this way, Acadia will be not [] apprised of any of the specific information you object to disclosing- it will only know that you are confirmed as fully vaccinated.
>
> .        .        .
>
> You will need to provide your COVID QR Code to HireRight within ten business days, by March 11, 2022.

(ECF No. 26-23.)

When Plaintiff failed to verify her vaccination status according to the terms of the accommodation as described by Mr. Ackles, she was placed on Unpaid Administrative Leave. (ECF No. 26-24.)  During her period of Unpaid Administrative Leave, Plaintiff met with Acadia

employees, Jennifer Toth and Monica Joynt.  (ECF No. 26-27.)  By email following the meeting, Ms. Toth wrote, "[a]s discussed, we have two questions that we needed answered in order to move forward. They are: (1) are you refusing to verify your vaccination status; and (2) are you refusing to be vaccinated in general.  You refused to respond to either of these questions during our discussion and on multiple occasions in the past when we've asked."  *Id*.  Ms. Toth provided Plaintiff with a final set of options:

> 1. If you are vaccinated, you will remain on unpaid administrative leave until you can verify your status.  We will need this information by today . . . .  Recall we narrowed our request to allow you to provide only QR Code.
> 2. If you are refusing to provide your vaccination status, despite us narrowing the information sought, we will need to move forward with your separation.
> 3. If you are not vaccinated, we will need this information by today . . . .  We will then also have to evaluate the fact that you previously stated that you were vaccinated (when this was not true) before moving forward with any discussions regarding an accommodation.

*Id.*  Plaintiff did not respond and was terminated the following day.  *Id*.

### D.  Procedural History

Following a charge filed with the Equal Employment Opportunity Commission ("EEOC") regarding her termination of employment, on August 31, 2023, Plaintiff received a Right to Sue Notice from EEOC.  (ECF No. 1 ¶ 36.)  Plaintiff initiated the instant action on November 28, 2023. (ECF No. 1.)  In the Complaint, Plaintiff alleges Hostile Work Environment (Count I), Religious Discrimination (Count II), and Retaliation (Count III) claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); "Religious Discrimination – Aiding and Abetting" (Count IV) under "the Maryland Anti-Discrimination Act," MD. CODE ANN., STATE GOV'T §§ 20-601, *et seq.,* and § 20-801; and Retaliation (Count V) under the "Maryland Human

Rights Act" MD. CODE ANN., STATE GOV'T §§ 20-601, *et seq.*[3]  *Id.*  Following discovery, Defendants moved for summary judgment.  (ECF No. 26, the "Motion.")  Plaintiff opposes the Motion.  (ECF Nos. 27, 28.)

## II.    <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id*. at 249.   Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences."  *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted); *see Robinson v. Priority Auto. Huntersville,*

---

[3] Plaintiff brings claims of religious discrimination and retaliation under "the Maryland Anti-Discrimination Act" and "Maryland Human Rights Act" (Counts IV and V), MD. CODE ANN., STATE GOV'T §§ 20-601, *et seq.*  Maryland courts refer to this portion of the State Government article as the Maryland Fair Employment Practices Act ("MFEPA").  *See, e.g., Peninsula Reg'l Med. Ctr. v. Adkins*, 448 Md. 197, 203 (2016).  Accordingly, this court refers to Counts IV and V as MFEPA claims.

*Inc.*, 70 F.4th 776, 780 (4th Cir. 2023) (providing that "plaintiffs need to present more than their own unsupported speculation and conclusory allegations to survive").

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).  The court "must not weigh evidence or make credibility determinations."  *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage).  Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).

## III.  <u>ANALYSIS</u>

### A. **Title VII Hostile Work Environment Claim**

To establish a hostile work environment claim, Plaintiff must demonstrate that (1) she experienced unwelcome harassment; (2) the harassment was based on her religion; (3) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *Baqir v. Principi*, 434 F.3d 733, 746 (4th Cir. 2006) (citing *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003)).  Defendants argue summary judgment is appropriate because Plaintiff cannot demonstrate she experienced any, much less religion-based and severe, harassment.

In response to the Motion, Plaintiff reiterates her Complaint allegations that Defendants' inquiries into the substance of her exemption request constituted harassment.  Plaintiff states,

unsupported by any record citation, that Defendants "continued to harass and intimidate Ms. Stafford into repeated new interviews, declarations, statements and 'attestations' of a detailed analysis of her religious faith" and "continued to demand she submit to new inquiries, e-mailing her throughout December that they could not recognize or grant her an accommodation until she gave more information.  Indeed, the evidence before the Court shows that Defendants even demanded to know *all her immunization objections and religious reasons*."  (ECF No. 28 at p. 23; emphasis in original.)

Without record support as required by Rule 56, Plaintiff's statements are mere allegations and insufficient to evade summary judgment; in other words, she fails to generate a triable issue of fact no matter the force of protestations set forth in the opposition.  *Robinson*, 70 F.4th at 780 (providing that "plaintiffs need to present more than their own unsupported speculation and conclusory allegations to survive" summary judgment).  Indeed, in the entirety of the hostile work environment claim section of her opposition to the Motion, Plaintiff includes only one record citation.  (ECF No. 28 at pp. 21–23.)  She cites Defendants' Exhibit 1, a 49-page excerpt of Plaintiff's deposition testimony.  *Id.* at p. 23.  Plaintiff offers no specific citation within the excerpt and the testimony in the excerpt concerns all facets of Plaintiff's tenure at Acadia and subsequent activities; it is not tailored to her hostile work environment allegations.  (ECF No. 27-2.)  Plaintiff "does not coherently identify *any* facts or portions of the submitted documents that could create a dispute of material fact, essentially leaving to this Court 'the unenviable task of poring over [voluminous] pages of . . . exhibits in search of bits of evidence that could preclude summary judgment[.]"  *Letke v. Wells Fargo Home Mortg., Inc.*, No. CV RDB-12-3799, 2015 WL 6163517, at *1 (D. Md. Oct. 19, 2015), *aff'd sub nom. Letke v. Wells Fargo Home Mortg.*, 639 F. App'x 955 (4th Cir. 2016).

Even if Plaintiff had identified record support to substantiate her allegations, as a matter of law, the calls and emails between and among Plaintiff and Acadia employees wherein Acadia sought clarification of the scope of Plaintiff's exemption request, and to follow up on Acadia's narrowed request for confirmation of Plaintiff's vaccination status (per Plaintiff's request that she not be compelled to disclose what she viewed as private information) do not create a foundation on which a reasonable factfinder could conclude she was subject to "severe and pervasive" harassment. *See, e.g., Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001) (identifying relevant considerations to determining the degree of hostility as "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it interferes with an employee's workplace." (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993))).  In evaluating whether an environment is hostile, courts examine the totality of the circumstances and apply "a subjective and objective test wherein 'a plaintiff must demonstrate not only that [she] subjectively perceived [her] workplace as hostile, but also that a reasonable person would perceive . . . that it was objectively hostile.'" *Tawwaab v. Virginia Linen Serv., Inc.*, 729 F. Supp. 2d 757, 775 (D. Md. 2010) (quoting *Fox v. GMC*, 247 F.3d 167, 178 (4th Cir. 2001)).  Here, even crediting Plaintiff's unsupported opposition, she fails to generate a triable issue.

Broadening the court's evaluation to be as permissive as possible, the court also considers Plaintiff's contention that the alleged workplace harassment resulted from the culminating effect of the following: when Plaintiff's manager asked on weekly Zoom calls whether the participants were vaccinated; when Acadia sent company-wide emails announcing "things like 'over 95% of Acadians are fully vaccinated!;" when Plaintiff's manager canceled an in-person meeting with Plaintiff because she was not fully vaccinated; and in Zoom calls with Mr. Ackles and others to

address her exemption requests.  (ECF No. 26-31, Plaintiff's Interrogatory Responses at p. 7.)  To support a claim of hostile work environment under Title VII, Plaintiff must show that but for her religion, she would not have been the victim of the alleged discrimination.  *See Tawwaab*, 729 F. Supp. 2d at 776 (finding harassment was not based on race when Plaintiff failed to adduce "sufficient evidence to show that 'but for' his race he would not have been subject to" alleged harassment.).

Plaintiff offers no record evidence on which a reasonable conclusion could be drawn that comments on a weekly Zoom call or company-wide emails at unspecified times were made based on her religion—she proffers no evidence that the speakers knew of her requested religious based exemption or anything else about her religion.  Even disparaging comments about vaccine status generally, had Plaintiff showed they occurred, would not support harassment based on religion. *See Tawwaab*, 729 F. Supp. 2d at 776 (drawing distinction between evidence of indiscriminately abusive comments and explicitly racial comments; the former were not racially motivated and did not support a Title VII hostile work environment claim).  Plaintiff similarly fails to create a triable issue as to whether her manager cancelled an in-person meeting because of Plaintiff's religion. Additionally, alone, the single instance of a cancelled meeting does not create a triable issue as to the requisite pervasive nature of the alleged or complained-of harassment.  *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 183 (1998) (explaining that "a recurring point" in courts' opinions regarding hostile work environment is that "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.").

In interrogatory answers, Plaintiff described two Zoom calls with Rob Ackles and Karen Swanson, and with Jennifer Toth and Monica Joynt that were "complete harassment" and "pressure[d] her."  (ECF No. 26-31 ¶ 16.)  Considering the totality of the circumstances—namely

that Defendants' emails and calls sought information regarding Plaintiff's vaccine exemption request in light of her earlier self-reported vaccinated status and that Defendants ultimately granted Plaintiff an accommodation—Plaintiff's conclusory accusations of harassment based on these two cited occasions, even considered in the light most favorable to her, do not create a foundation on which a reasonable factfinder could conclude Plaintiff was subject to an "objectively hostile or abusive work environment." *Lissau*, 159 F. 3d at 183 (quoting *Harris*, 510 U.S. 17, 21 (1993)); *Spriggs*, 242 F.3d at 184 (quoting *Harris*, 510 U.S. at 21).  Plaintiff has thus failed to generate a triable issue of fact as to her hostile work environment claim.

### B.  Title VII Religious Discrimination

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's religion."  42 U.S.C. § 2000e-2.  The definition of "religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).  "Because this definition includes a requirement that an employer 'accommodate' an employee's religious expression, an employee is not limited to the disparate treatment theory to establish a discrimination claim.  An employee can also bring suit based on the theory that the employer discriminated against her by failing to *accommodate* her religious conduct."  *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1018 (4th Cir. 1996) (emphasis in original).  Thus, courts generally recognize "two theories in asserting religious discrimination claims," "denominated as the 'disparate treatment' and 'failure to accommodate' theories."  *Id.* at 1017; *see U.S. Equal Emp. Opportunity Comm'n v. Greyhound Lines, Inc.*, 554 F. Supp. 3d 739, 751 (D. Md. 2021) (same).

### i. Disparate Treatment

"To prove a Title VII claim under a disparate treatment theory, a plaintiff 'must demonstrate that the employer treated her differently than other employees because of her religious beliefs.'" *Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 471 (4th Cir. 2025) (quoting *Chalmers*, 101 F.3d at 1012). "Accordingly, a plaintiff-employee, alleging disparate treatment with respect to her discharge, satisfies her burden at the summary judgment state if she establishes that her job performance was satisfactory and provides 'direct or indirect evidence whose cumulative probative force supports a reasonable inference that [the] discharge was discriminatory.'" *Chalmers*, 101 F.3d at 1017 (quoting *Lawrence v. Mars, Inc.*, 955 F.2d 902, 905–06 (4th Cir.), *cert. denied*, 506 U.S. 823 (1992)).

Plaintiff identifies no statement or action by Defendants that, considered separately or together, directly reflect a desire or intent to treat her differently due to her religion and bore on the decision to terminate her employment. *See Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101–102 (2003) (explaining direct evidence of discrimination as "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision."). Plaintiff alleges that Mr. Ackles and Ms. Swanson were the "decision makers" responsible for terminating her employment. (ECF No. 28 at p. 20.) But Ms. Swanson testified at deposition that Plaintiff was fired for failure to submit proof of her vaccination by the terms of her accommodation request. (ECF No. 26-28, Swanson Deposition Tr. 36:16–37:2.) Correspondence from Mr. Ackles and from Acadia (through other Acadia employees) repeatedly warned Plaintiff that failure to comply with Acadia's vaccination policy, as accommodated to meet

her concerns, would result in her termination. (ECF Nos. 26-23, 26-27.) Plaintiff fails to generate a genuine dispute of material fact as to this issue.

Without direct evidence, Plaintiff's remaining option to establish a *prima facie* case of religious discrimination is under a burden-shifting scheme similar to the one articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

> This might consist of evidence that the employer treated the employee more harshly than other employees of a different religion, or no religion, who had engaged in similar conduct. If the employee presents such evidence, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions towards the employee. The employee is then required to show that the employer's proffered reason is pretextual, and that the employer's conduct towards her was actually motivated by illegal considerations. At all times, the ultimate burden of persuasion lies with the employee.

*Chalmers*, 101 F.3d at 1017–18 (citations omitted).

Acadia's vaccination policy applied equally to all employees. (ECF 26-12, Acadia COVID-19 Mandatory Vaccination Policy.) Plaintiff alleges that Acadia's response letters to other employees' exemption requests show disparate treatment disfavoring her (based on her religion), but Plaintiff fails to consider (or acknowledge) that the employees in question sought exemption from receiving the vaccine in the first place. (ECF No. 26-29.) Plaintiff sought an exemption from disclosing what she viewed as private information about her vaccination status based on her religious beliefs and convictions; and had previously expressly, clearly, and over no objection advised Acadia that she was, in fact, vaccinated against COVID-19. As such, Plaintiff was not similarly situated to employees who objected to the vaccine mandate on grounds that vaccination ran counter to their religious beliefs or practices.

One other Acadia employee made a similar objection to reporting her vaccination status. (ECF No. 26-28, Swanson Deposition Tr. 27:6–16.) Acadia offered that employee the same

accommodation offered to Plaintiff, specifically to provide proof of vaccination directly to a third-party verification company to shield the information the employee (like Plaintiff) asserted was private per her religious practice.  *Id.*  When the other employee declined to avail herself of the accommodation, and did not comply with the Policy (per the accommodation or otherwise), Acadia terminated her employment as well.  *Id.*

Plaintiff fails to identify a relevant comparator and provides no evidence on which a reasonable factfinder could conclude that she was treated more harshly than others similarly situated based on religion.  *See Barnett*, 125 F.4th at 472 (finding plaintiff had "sufficiently alleged facts supporting a reasonable inference of discriminatory intent" when plaintiff alleged defendant-employer "decided to pick winners and losers from among the employees making exemption requests, based upon whether the [Exemption Committee] found an employee's religious beliefs were legitimate" and "chose to exempt employees who came from more prominent religions or held to more conventional beliefs related to religious exemption to vaccines, but denied exemptions to employees [] who held less well-known or respected religious beliefs").

### ii.  Failure to Accommodate

The court notes, at the outset, that Plaintiff appears to bring her Title VII religious discrimination claim under a disparate treatment theory; she does not allege in the Complaint that Acadia failed to provide reasonable accommodation.  *See* ECF No. 1, Complaint ¶ 50 ("[t]he discrimination was because of her religious beliefs after she was required by Defendants' policies to submit a religious exemption declaration explaining her faith in order to receive an accommodation from the experimental COVID-19 vaccination.").  Nonetheless, under Title VII, an employer has a "statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship."  *E.E.O.C. v. Firestone Fibers*

*& Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977)).  The court will therefore consider whether this liability theory presents a trial issue based on the undisputed facts presented.

"To state a prima facie failure-to-accommodate claim, an employee must allege that: '(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement.'" *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 509 (D. Md. 2019) (quoting *U.S. Equal Emp. Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017)).  "If the employee establishes a prima facie case, the burden then shifts to the employer to show that it could not [reasonably] accommodate the plaintiff's religious needs without undue hardship." *Firestone Fibers & Textiles Co.*, 515 F.3d at 312 (quoting *Chalmers*, 101 F.3d at 1019).

To assess whether Plaintiff states a prima facie case for failure to accommodate, the court must identify the alleged conflicting belief.  Plaintiff avers: "[i]t is . . . a material dispute of fact that Plaintiff objected to both the COVID-19 vaccination and the medical privacy waivers required for reporting on vaccination status."  (ECF No. 28 at p. 12.)  But, for the reasons set forth above, Plaintiff cannot base a failure to accommodate prima facie case on the former, because she failed to communicate a religious-based objection to the COVID-19 vaccination to Defendants.  In fact, as explained, it is undisputed that she confirmed she was vaccinated without complaint.  As for the second basis, even assuming Plaintiff could demonstrate that objection to medical privacy waivers was part of her sincerely held religious belief, Defendants provided a reasonable accommodation of same; but Plaintiff declined to conform and act accordingly.

Plaintiff's accommodation request letter states: "I cannot comply with Acadia's policy on the Covid-19 vaccination, or on any medical procedure for that matter" because "[o]ur Constitution protects my God-given freedoms, including my right to medical privacy."  (ECF No. 26-14.)  In the Religious COVID-19 Vaccination Exemption Accommodation Worksheet provided by Acadia, Plaintiff answered the question "[i]ndicate whether you are opposed to all immunizations, and if not, the religious basis that prohibits particular immunizations" with "I am not willing to waive my right to medical privacy."  (ECF No. 26-15.)  Plaintiff submitted her accommodation requests after indicating to her employer that she had received the vaccine.  (ECF No. 26-10.)  *See* ECF No. 26-13, Stafford Deposition Tr. 74:16–25 ("It says that you were fully vaccinated on April 12th, 2021, correct? A. Yes. Q. It says: 'Fully vaccinated date (shot date).' Do you see that? A. Yes. Q. Okay.  Did you complete that? A. Yes.").  As Defendants proceeded to gather information regarding Plaintiff's accommodation request, they offered her numerous occasions to clarify the nature of her request.  *See* ECF Nos. 26-25; 26-27; 28 at p. 11 (describing Zoom call with Mr. Ackles and Ms. Swanson).  In her response to the Motion, Plaintiff fails to identify record support, even in her own deposition, demonstrating she informed her employer that her objection was to receiving the COVID-19 vaccine.  *See Robinson*, 70 F.4th at 780 (providing that "plaintiffs need to present more than their own unsupported speculation and conclusory allegations to survive" summary judgment).  Accordingly, Plaintiff fails to establish a prima facie failure to accommodate claim based on her alleged religious objection to the COVID-19 vaccine.

Plaintiff's second alleged religious belief in conflict with Acadia's Policy is her objection to waiving her medical privacy by reporting her vaccination status to Acadia.  Plaintiff communicated this objection to Defendants through her religious exemption requests.  (ECF Nos. 26-14, 26-15.)  Upon consideration of her requests, Defendants offered her an accommodation:

"rather than directly providing the Company with a photocopy of your vaccine card or other healthcare forms documenting your vaccine status," Plaintiff could provide "a valid COVID-19 Vaccination QR Code, submitted directly to our third-party agency, HireRight, in order to verify you vaccination status." (ECF No. 26-23.) With this accommodation, "Acadia [would] not be apprised of any of the specific information [Plaintiff] object[s] to disclosing – it will only know that you are confirmed as fully vaccinated." *Id.* Inasmuch as Plaintiff had, months earlier, expressly told Acadia she was vaccinated (over no religious-based or other objection), Acadia's accommodation (that Plaintiff provide a vaccine QR code to verify her vaccinated status) met Plaintiff's stated objection regarding disclosure of what she considered private medical information protected by her religious beliefs: disclosure of the name of the healthcare provider who administered the vaccine, and the type and date(s) of vaccine doses received.

Even if Plaintiff established a prima facie case of failure to accommodate her religious-based objection to waiving claimed medical privacy, as said above, Acadia has demonstrated undisputed facts that, as a matter of law, amount to provision of reasonable accommodation. "To satisfy its burden, the employer must demonstrate *either* (1) that it provided the plaintiff with a reasonable accommodation for his or her religious observances *or* (2) that such accommodation was not provided because it would have caused an undue hardship—that is, it would have 'result[ed] in more than a *de minimis* cost to the employer.'"). *Firestone Fibers & Textiles Co.*, 515 F.3d at 312 (quoting *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986)). "Notably, '[e]ither one of these conditions is sufficient[]' and, 'if an employer has provided a reasonable accommodation, [the court] need not examine whether alternative accommodations not offered would have resulted in undue hardship.'" *Brennan v. Deluxe Corp.*, No. CV ELH-18-2119, 2021 WL 2155004, at *12 (D. Md. May 27, 2021) (quoting *Reed v. Fairfax Cty., Virginia*, No. 1:18-

CV-1454, 2020 WL 252992, at *5 (E.D. Va. Jan. 15, 2020)), and *Firestone Fibers & Textiles Co.*, 515 F.3d at 312).

In the accommodation letter, Defendants clarified that "consistent with Company policy and out of consideration for your fellow workers and others with whom you interact in your work for Acadia, we cannot eliminate the verification component completely." (ECF No. 26-23.) *See Firestone Fibers & Textiles Co.*, 515 F.3d at 314–15 (quoting *Chalmers*, 101 F.3d at 1018 and *Ansonia Bd. of Educ.*, 479 U.S. at 70) (explaining "while an employer must 'actively attempt to accommodate an employee's religious expression or conduct,' it is not required to do so 'at all costs.'"). Plaintiff does not allege, nor does the record suggest or allow a reasonable conclusion, that she informed Defendants that the offered accommodation was insufficient or not reasonable. *See Firestone Fibers & Textiles Co.*, 515 F.3d at 316 (noting "the importance of 'bilateral cooperation' between an employer and employee in their search for a reasonable accommodation. (quoting *Philbrook*, 479 U.S. at 69)). Rather, the undisputed fact is that she simply declined to act accordingly.

Accordingly, based on the undisputed facts and applicable law, Defendants are entitled to judgment in their favor on Plaintiffs' claims of Title VII violation under both disparate treatment and failure to accommodate theories of religious discrimination.

## C. Title VII Retaliation

"Title VII prohibits an employer from retaliating against an employee for complaining about prior discrimination." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) (citing *Foster*, 787 F.3d at 249). A plaintiff may prove a Title VII retaliation claim through either direct evidence of retaliatory animus or the *McDonnell Douglas* burden-shifting framework. *Id.* (citing *McDonell Douglas Corp.*, 411 U.S. 792). Plaintiff does not proceed on a direct evidence

basis; rather, she proceeds under the *McDonnell Douglas* burden-shifting framework.  *See* ECF No. 28 at p. 24 ("when we review the [*McDonnell Douglas*] test, each element proves Ms. Stafford was retaliated against").

To establish a prima facie claim for retaliation, Plaintiff must demonstrate that (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) a causal link exists between the protected activity and the adverse employment action. *Roberts*, 998 F.3d at 122.  Here, it is undisputed Plaintiff suffered an adverse employment action— termination—therefore, the court's analysis will focus on the first and third elements.  *See Id.* (providing that "'[d]ischarge' from employment is one form of adverse employment action.").

Plaintiff alleges she was terminated in retaliation for submitting her religious exemption request.  (ECF No. 28 at p. 23.)  "But for her submission of her religious exemption from the COVID-19 vaccination, Ms. Stafford would not have been suspended from and then terminated from her job with Defendants."  *Id.* at p. 24.  *See also* ECF No. 1, Complaint ¶ 60 ("The retaliation was because of her religious beliefs after she was required by Defendants' policies to submit a religious exemption declaration explaining her faith in order to receive an accommodation from the experimental COVID-19 vaccination.").  Here, Plaintiff mistakenly "conflate[s] requests for accommodation by way of exemption with opposition to allegedly unlawful denial of such accommodation requests . . . 'merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation.'"  *Menk v. MITRE Corp.*, 713 F. Supp. 3d 113, 152 (D. Md. 2024) (quoting *Equal Emp. Opportunity Comm'n v. N. Mem'l Health Care*, 908 F.3d 1098, 1102 (8th Cir. 2018)).  This court further explained the distinction in *Perlman v. Mayor and City Council of Baltimore*:

> Section 3(a) of Title VII, which addresses retaliation claims, references "oppos[ition] to any practice," or "participation in any

manner in an investigation, proceeding, or hearing" to explain what constitutes a protected activity. *Id*. In considering whether a plaintiff's action constitutes "opposition activity" that would be protected, the Fourth Circuit has stated that "[o]pposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998); *see also id*. ("Whether an employee has engaged in protected opposition activity, turns upon balancing 'the purpose of the Act to protect persons engaging reasonably in activities opposing...discrimination, against Congress's equally manifest desire not to tie the hands of employers in the objective selection and control of personnel.'") (ellipsis in original).

.        .        .

[M]aking a religious accommodation request is not protected activity. The making of such a request neither "oppos[es] any practice" of the [defendant], nor constitutes "participation in an investigation, proceeding, or hearing" to do with any Title VII violations committed by the [defendant].

No. CV-SAG-15-1620, 2016 WL 640772, at *5–6 (D. Md. Feb. 18, 2016).

Even if Plaintiff's accommodation request constituted a protected activity, she has not generated triable issue regarding the causal connection between her exemption request and termination. *See Kline v. Certainteed Corp.*, 205 F. Supp. 2d 468, 474 (D. Md. 2002) (instructing "[t]o survive summary judgment . . . [plaintiff] must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action." (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)).  As explained above, Ms. Swanson testified at deposition that Plaintiff was fired because she failed to submit proof of her vaccination by the terms of her accommodation. (ECF No. 26-28 Tr. 36:16–37:2.)  Correspondence from Mr. Ackles and from Acadia (through other Acadia employees) repeatedly warned Plaintiff that failure to comply with its vaccination

policy, as accommodated per Plaintiff's request, would result in her termination. (ECF Nos. 26-23, 26-27.)

Plaintiff offers no record evidence on which to rest her claims that she was fired or otherwise retaliated against because she submitted a religious exemption request. In short, she provides nothing on which a reasonable factfinder could rely to conclude that she was fired because she sought a religious-based exemption. Therefore, even accepting for sake of argument that an exemption request is protected activity, Plaintiff fails to generate a dispute of fact as to the reason or basis for, or even motivating factor contributing to, her termination. Accordingly, there is no triable issue as to Plaintiff's retaliation claim.

### D. MFEPA Claims

Defendants argue that if the court grants summary judgment in Defendants' favor on Plaintiff's Title VII retaliation claim (Count III), summary judgment is appropriate under the same analysis on Plaintiff's MFEPA retaliation claim (Count V). Similarly, Defendants assert, if the court grants summary judgment in Defendants' favor on Plaintiff's Title VII religious discrimination claims (Count II), summary judgment is appropriate on Plaintiff's MFEPA aiding and abetting religious discrimination claim (Count IV). Plaintiff mounts no challenge to (indeed, does not address) Defendants' arguments regarding Counts IV and V. Accordingly, Plaintiff waives opposition to summary judgment in Defendants' favor on these counts. *See Johnson v. United States*, 861 F. Supp. 2d 629, 634 (D. Md. 2012) (finding "[f]ailure to raise issues in opposition to summary judgment functions as a waiver." (citation omitted)); *Letke*, 2015 WL 6163517, at *1 n.2 (noting court may grant summary judgment in favor of defendant on grounds that plaintiff failed to identify any facts or portions of submitted documents that could create a dispute of material fact alone).

Even if Plaintiff had not waived opposition to Defendants' arguments regarding the state law counts, judgment as a matter of law on Counts IV and V is still warranted. MFEPA is the state analogue to federal employment discrimination statutes. *Ensor v. Jenkins*, No.CV ELH-20-1266, 2021 WL 1139760, at *18 (D. Md. Mar. 25, 2021). "Courts judge discrimination and retaliation claims brought under MFEPA by the same standards as those same claims brought under Title VII." *Lowman v. Maryland Aviation Admin.*, No.CV JKB-18-1146, 2019 WL 133267, at *4 (D. Md. Jan. 8, 2019) (citing *Hawkins v. Leggett*, 955 F. Supp. 2d 474, 496–97 (D. Md. 2013)). Accordingly, the court's above analysis of Plaintiff's retaliation claim under Title VII applies equally to her claim under MFEPA. *See Ensor*, 2021 WL 1139760, at *18 (analyzing plaintiff's MFEPA claim under the Title VII standard); *see also Churchill v. Prince George's Cnty. Pub. Schs.*, No. PWG-17-980, 2017 WL 5970718, at *5 n.6 (D. Md. Dec. 1, 2017) (analyzing Title VII and MFEPA claims together).

In Count IV, Plaintiff alleges that Defendants aided and abetted religious discrimination in violation of Maryland law. MD. CODE ANN., STATE GOV'T § 20-801. Under § 20-801, "[a] person may not: (1) aid, abet, incite, compel, or coerce any person to commit a discriminatory act; (2) attempt, directly or indirectly, alone or in concert with others, to commit a discriminatory act" where discriminatory act is defined, as relevant here, as an act prohibited under MFEPA. *Id.* § 20-801, 20-101(d)(4). For the reasons set forth above, based on the undisputed material facts, Defendants are entitled to judgment as a matter of law on Plaintiff's claim under § 20-801 of MFEPA.

### E. Defendant Ackles' Liability

Defendants move for summary judgment in favor of Mr. Ackles as to Plaintiff's Title VII claims (Counts I, II, III). It is undisputed that Mr. Ackles served as Plaintiff's supervisor at Acadia.

*See* Complaint, ECF No. 1 ¶ 4; Answer, ECF No. 11 ¶ 4. Supervisors are not liable in their individual capacities for Title VII violations. *Lissau*, 159 F.3d at 180; *see, e.g., Lewis v. Senior Lifestyle*, No. CV GLR-23-43, 2023 WL 8478901, at *1 n.3 (D. Md. Dec. 7, 2023) (noting plaintiff "asserts Title VII claims, and the only proper defendant in a Title VII case is the employer . . . not its individual employees."). "Only an employer may be held liable for Title VII violations because individual liability under Title VII 'would improperly expand the remedial scheme crafted by Congress.'" *Ensor*, 2021 WL 1139760, at *18 (quoting *Lissau*, 159 F.3d at 181). "Moreover, because the [M]FEPA analysis tracks that of Title VII, there is no individual liability under [M]FEPA." *Id.*; *see Brown v. Baltimore Police Dep't*, RDB-11-00136, 2011 WL 6415366, at *14 (D. Md. Dec. 21, 2011) (explaining "[b]ecause supervisors cannot be liable in their individual capacities under Title VII. . . supervisors cannot be liable under . . . [M]FEPA."). Accordingly, as Plaintiff's supervisor, Defendant Ackles is entitled to judgment in his favor on all counts.

## IV.    **CONCLUSION**

For the reasons set forth herein, by separate order, Defendants' Motion (ECF No. 26) will be granted.


/S/

March 10, 2025                                    _____

                                                 Julie R. Rubin
                                                 United States District Judge